IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TORI J. RAINS,

        Plaintiff,       OPINION AND ORDER

   v.

                   08-cv-023-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   Because Judge Shabaz will be convalescing from shoulder surgery for an extended period of time, I have assumed administration of the cases previously assigned to him, including this one, which is an action for judicial review of an adverse decision of the commissioner of Social Security brought under 42 U.S.C. § 405(g).  Plaintiff Tori J. Rains seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the judge failed to properly consider her treating physician's opinion and erred in assessing her credibility.  She also contends that the administrative law judge improperly determined her mental residual functional capacity and

1

erred in relying on the vocational expert testimony in finding that she could perform her past work. I find that the administrative law judge did not err in considering plaintiff's treating physician's opinion or relying on the vocational expert testimony. Although the administrative law judge could have articulated his credibility and residual functional capacity determinations more precisely, any errors that he made were harmless. Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background and Procedural History

Plaintiff was born on March 4, 1962 and has a tenth grade education. AR 63, 358. She has relevant work experience as a customer service representative, salesperson and cashier. AR 18.

Plaintiff applied for Social Security Disability Benefits on February 24, 2005, alleging disability as of February 3, 2005 because of osteoarthritis, cervical degenerative disc disease, pain and depression. AR 41-43. After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on June 12, 2007 before Administrative Law Judge Arthur J. Schneider in Madison, Wisconsin. The

2

administrative law judge heard testimony from plaintiff, who was represented by a lawyer, AR 355-82, from a neutral medical expert, AR 383-96; and from a neutral vocational expert, AR 397-402.  On August 16, 2007, the administrative law judge issued his decision finding plaintiff not disabled.   AR 12-19.   The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on October 24, 2007.  AR 4-7.

B.  Medical Evidence

1.  Records prior to alleged disability onset date

Plaintiff underwent cervical surgery with fusion of the C5 and C6 disks in August 2001 and in September 2003.  AR 209.  On February 4, 2004, plaintiff saw Dr. William Shannon, a physical medicine and rehabilitation physician, and reported increased neck and shoulder pain.  Dr. Shannon noted that plaintiff had moderate limitation in active cervical range of motion and some tenderness in her bilateral cervical paraspinal and upper trapezius muscles.  He prescribed oxycodone for her pain control.  AR 130.

On April 1, 2004, plaintiff saw her family physician, Dr. Amy Grelle, and complained of migraines.   She admitted that she was drinking once a week.  Dr. Grelle prescribed Toradol, Phenergan and ten tablets of Percocet on a very restricted basis for plaintiff's migraine headaches.  AR 177-78.  On April 20, 2004, plaintiff saw Dr. Grelle after being

3

involved in a motor vehicle accident.  A cervical spine x-ray showed post surgical changes with questionable healing in C5 and C6.  AR 175.

On May 3, 2004, plaintiff saw Dr. Shannon and reported that her neck pain was worse because she had been involved in a motor vehicle accident.  Dr. Shannon noted that plaintiff had moderate range of cervical motion and several discrete trigger points.  Four trigger points were injected with medication.  He discussed medication options with plaintiff. AR 128.

On June 11, 2004, plaintiff saw Dr. Shannon, reporting continued severe neck, upper back and shoulder pain.  He noted that she had moderate limitation in active cervical range of motion and muscle tenderness.  AR 127.  Plaintiff saw Dr. Shannon again on August 20, 2004 for pain.  AR 126.

Plaintiff saw her orthopedic surgeon, Dr. Craig Dopf, on August 20, 2004 and reported that she continued to have neck and arm pain.  After examining her, Dr. Dopf found that plaintiff had normal strength and sensation in the bilateral upper extremities.  A cervical spine x-ray indicated persistent pseudo arthritis of C5-6.  Dr. Dopf indicated that plaintiff's smoking was interfering with the healing of her pseudoarthritis.  He recommended an external cervical bone stimulator and an onsite job evaluation by physical therapist Mike Miller.  AR 165.  On September 2, 2004, plaintiff called Dr. Dopf's office reporting that the stimulator was causing her severe neck pain and asked for a new prescription for her pain.

4

The office informed her that the clinic's policy was to not provide narcotics to patients who continue to smoke after fusion surgery.  AR 164.

On November 19, 2004, plaintiff saw Dr. Shannon and complained of increased neck, shoulder and back pain because of increased work activities.  She reported that she was tolerating an eight-hour workday but that she was having more pain since she had been working mandatory overtime.  Dr. Shannon recommended that plaintiff work no more than eight hours a day and no more than 40 hours a week.  Plaintiff reported minimal pain relief but no side effects from her medications (oxycodone and methocarbamol).  He injected medication into plaintiff's eight trigger points and adjusted her pain medication to include Kadian.  AR 125.

On January 11, 2005, plaintiff saw Dr. Shannon and reported severe pain in the back of her neck, upper back and upper shoulder areas radiating into both arms.  She reported that her work activities aggravated her pain but that the new medication Kadian was helping. AR 124.

2.  Records after alleged disability onset date

On June 3, 2005, Dr. Grelle saw plaintiff for right knee pain.  Although Dr. Grelle wrote plaintiff a prescription for Vicodin, she withheld it because plaintiff had received 120 morphine pills from the pharmacy two days before.  AR 162.

5

On June 7, 2005, plaintiff sought treatment from Dr. Shannon for continued pain in her neck, upper back and shoulders, which she stated increased with activity. She reported that she had stopped working and was not able to tolerate any sustained sitting, standing or walking and needed to recline several times a day. Dr. Shannon noted that plaintiff had mild to moderate limitation in active cervical range of motion, full shoulder range of motion and continued diffuse muscle tenderness. He noted that her strength was good to normal in her upper extremities and that she was doing reasonably well on her current pain medications. Dr. Shannon discussed with plaintiff the benefits of an ongoing exercise program. AR 237.

On June 9, 2005, Dr. Shannon completed a musculoskeletal impairment residual functional capacity questionnaire for plaintiff, indicating that the restrictions applied as of August 20, 2004. He noted that plaintiff had chronic neck, back and shoulder pain and post cervical fusion with pseudoarthritis. Dr. Shannon indicated that plaintiff's pain frequently interfered with her attention and concentration and that she had moderate limitations in dealing with the normal stresses of competitive employment. He wrote that her medication caused fatigue and drowsiness and impaired her concentration. Dr. Shannon concluded that she could sit or stand for 15 minutes at a time and for a total of two hours in an eight-hour work day and occasionally lift 10 pounds or less. He also found that plaintiff would need to lie down 15 to 30 minutes in an eight-hour work day and need to be absent from work more than three times a month. AR 154-57.

6

Plaintiff's August 31, 2005 cervical myeogram was normal.  AR 243.  Her computed tomography myeogram performed on the same date was negative for spinal canal stenosis and showed solid spinal fusion with mild bilateral neural foraminal narrowing at C5-6 with slight tortuosity of the exiting nerve root sheath.  AR 245.  On September 12, 2005, Dr. Dopf informed plaintiff that the cervical fusion was solid.  He also told her he had no surgical solution to her continuing pain complaints.  AR 338.

On November 21, 2005, plaintiff reported to Dr. Shannon that she was doing poorly but that her medications (MS Contin and oxycodone) had been helpful and allowed her to remain somewhat active.  Dr. Shannon noted that plaintiff had significant tenderness in multiple areas of the spine and several trigger points and administered trigger point injections.  AR 235.

On January 25, 2006, plaintiff saw Dr. David Bryce at the pain management clinic. Upon examination, he noted that plaintiff had decreased cervical range of motion that increased her pain, particularly with lateral rotation and bending.  Plaintiff also had tenderness in the bilateral cervical facet area.  Dr. Bryce wrote that plaintiff rated her pain as a 10 on a 10-point scale.  He recommended diagnostic cervical facet injections.  AR 343-45.

On February 20, 2006, plaintiff saw Dr. Shannon for neck and shoulder pain that she said increased with cold weather.  He continued her prescription of MS Contin.  Plaintiff

denied any side effects from the medication.   Dr. Shannon discussed Dr. Bryce's recommendation with her.  AR 233, 349.

On May 22, 2006, Dr. Shannon noted that plaintiff was stable with regard to her neck and shoulder pain.  AR 232.  On September 8, 2006, he noted that there had been little change in plaintiff's chronic pain symptoms.  He encouraged her to continue with a regular exercise program.  AR 231.  On March 9, 2007, plaintiff reported to Dr. Shannon that she had increased pain and more difficulty sleeping at night.  Dr. Shannon gave her trigger point injections.  AR 229.

## C.  Mental Health Treatment

On April 1, 2004, plaintiff saw her family physician, Dr. Grelle, and complained of depression.  She admitted that she was drinking once a week.  Dr. Grelle switched plaintiff's anti-depressant medication from Lexapro to Effexor.  AR 177-78.  Also in April 2004, plaintiff saw a social worker, Beth Whittemore, concerning problems with her husband. Plaintiff reported that her husband left her when he found out that she had used cocaine in the past.  In May 2004, Whittemore noted that plaintiff's medication was "working better" and that she and her husband were working on being together.  Plaintiff was discharged after three sessions because Whittemore thought that she had received the help she needed.  AR 120-122.

On June 3, 2005, plaintiff reported having a little more anxiety that had been gradually increasing.  Dr. Grelle increased plaintiff's Effexor dosage.  AR 163.  Plaintiff received additional counseling from Whittemore from June 7, 2005 through August 2005 for family issues, including the death of her brother in February 2005.  She was discharged after meeting her goals.  AR 248-52.

On July 18, 2005, Dr. Grelle saw plaintiff for her depression and indicated that she was doing "extremely well" on an increased dosage of Effexor.  AR 159.  On November 25, 2005, plaintiff again saw  Dr. Grelle, who prescribed Xanax for her occasional break-through anxiety.  AR 331-32.  In November 2005, plaintiff was counseled by a different social worker for family problems.  AR 251-252.

### D.  Consulting Physicians

On April 21, 2005, Ricardo Almonte, a state agency physician, completed a residual physical functional capacity assessment for plaintiff, finding that she had neck pain status post C5-6 fusion and migraines, could lift ten pounds frequently and 20 pounds occasionally and could stand or walk six hours and sit six hours in an eight-hour work day.  AR 142-53.  This assessment was affirmed by state agency physician Michael Baumblatt on July 26, 2005. AR 190.  On April 20, 2005, state agency psychologist Jack Spear reviewed plaintiff's records and concluded that plaintiff did not have a severe mental impairment.  AR 131-144.

9

On July 19, 2005, psychologist Douglas C. Varvil-Weld performed a consultative examination of plaintiff for the state disability agency.  He noted that plaintiff had no significant limitation in her ability to understand and remember instructions and there was no indication that her judgment was impaired.  However, he did state that she might have some difficulty receiving supervision appropriately.  He indicated that although plaintiff denied it, she might have a substance abuse disorder.  Dr. Varvil-Weld gave plaintiff a global assessment functioning score of 60.  AR 184-89.

On July 27, 2005, state agency consulting psychologist William Merrick completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record, including Dr. Varvil-Weld's report.  He evaluated the evidence under the listing categories for affective disorder and substance addiction disorder.  In addressing the "B" criteria for these listings, he found that plaintiff had moderate restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Dr. Merrick concluded that the evidence did not establish the presence of the "C" criteria.  AR 191-202.

Dr. Merrick also completed a mental residual functional capacity assessment for plaintiff.  He found that plaintiff was not significantly limited in her ability to understand, remember and carry out simple instructions or to make simple work-related decisions but that she was moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be

10

punctual within customary tolerance, work in coordination or proximity to others without being distracted by them and complete a normal work day and work week at a consistent pace.  AR 205-06.  He also concluded that she was moderately limited in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors.  He did not indicate that she had any limitations in the ability to respond to changes in the work setting.  AR 206.

On August 29, 2005, Dr. Cheryl Ray performed a consultative neurology examination on plaintiff.  Dr. Ray noted that plaintiff had chronic soft tissue texture changes to the trapezius cervical musculature.  She stated that plaintiff was able to sit, stand, walk, see, hear, speak and travel.  However, Dr. Ray wrote that she was unable to judge plaintiff's physical tolerance for duration of standing or sitting during the examination.  AR 209-11.

### E.  Hearing Testimony

Plaintiff testified that her last job was as a customer service representative for Wisconsin Physicians Service.  She explained that she talked to customers on the phone while in a seated position.  AR 358-59.  She also testified that she had worked as a receptionist at Harley Davidson in Sauk Prairie, Wisconsin for three years.  AR 362-63.  Her other jobs included cleaning properties for Midland Builders, bartending and cashiering. AR 363-64.  Plaintiff testified that she left her last job in February 2005 because she was on the verge of being terminated for missing work because of her pain from migraines.  AR 365-67.

11

Plaintiff testified that her migraine headaches had gotten worse in the last few years and that she took Butalbital for them. AR 368. She also testified that she had neck pain that radiated down her back, across her shoulder and down both arms and caused her hands to go numb. She testified that after she had her neck surgery it took three years for the fusion to become solid. AR 369.

Plaintiff reported that she takes morphine for her pain and that it causes her to be tired, confused and forgetful. AR 372-73. She said that her pain is better when the back of her head is supported in a chair. AR 377. Plaintiff testified that she was depressed and took Effexor for depression. She also testified that she took Xanax for anxiety but it makes her sleepy. AR 374-75.

Plaintiff testified that she does some cooking, washes dishes and does laundry. AR 371. She further testified that in the past two years, she has become more limited in her ability to do household chores. AR 376.

Plaintiff testified that she smoked two packs of cigarettes a day but that she had quit using alcohol four years ago and quit using cocaine six years ago. AR 377-79. She testified that she had been placed on probation after being charged with battery in a domestic dispute and placed on probation. AR 361. She also testified that she had been arrested three times for disorderly conduct concerning domestic issues. AR 361, 387.

The administrative law judge called Dr. Phillip Ruppert, a psychologist, to testify as a neutral medical expert. AR 382. Ruppert testified that plaintiff had an affective disorder,

a personality disorder and a substance addiction disorder.  AR 390.  He further testified that plaintiff had mild to moderate limitations in her daily activities, social functioning and concentration, persistence or pace and no episodes of decompensation.  AR 391-92.  Dr. Ruppert testified that he was not able to separate the limitations caused by plaintiff's substance abuse disorders from those caused by her affective or personality disorders.

The administrative law judge called Richard Willette to testify as a neutral vocational expert and advised him as follows:  "If in the testimony you're about to provide, if there's any conflict between your testimony regarding the occupational evidence and the information in the <u>Dictionary of Occupational Titles</u>, and its companion publication, the <u>Selected Characteristics of Occupations</u>, would you please tell us that in today's hearing?"  Willette responded that he would do so.  AR 397-98.  The administrative law judge asked Willette to consider an individual of plaintiff' age, education and work experience who could lift 20 pounds occasionally and 10 pounds frequently, sit and stand for six out of eight hours and perform only simple, routine and repetitive work.  Willette responded that such an individual could perform plaintiff's past work as a sales representative, customer service representative, cashier and receptionist.  He also testified that such an individual could perform other jobs available in the economy, namely office helper, information clerk and surveillance monitor.  AR 399.  In a second hypothetical, the administrative law judge added the limitations of sitting and standing for only four hours in an eight-hour work day and

13

missing two or more days of work a month.  Willette testified that such an individual could

not perform plaintiff's past work or any work in the economy.  AR 400.

On cross examination, Willette testified that the individual in the first hypothetical

would not necessarily be precluded from performing plaintiff's past work even if she was

"seriously limited [in], though not precluded" from maintaining attention and concentration

for extended periods, working in coordination with or in proximity to others without

distraction, interacting appropriately with the public and accepting instructions and

responding appropriately to supervisory criticism could perform plaintiff's past work.  AR

402.


### F.   The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge

performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he

found that plaintiff had not engaged in substantial gainful activity since February 3, 2005.

At step two, the administrative law judge found that plaintiff had severe impairments of a

depressive disorder with features of personality and substance abuse disorders and a history

of cervical fusion with residual neck pain.  AR 15.  In finding that plaintiff had a severe

impairment of depressive order, he relied on the consultative examination of Dr. Varvil-

Weld, the state agency psychologists' opinions and the medical expert's testimony.  The

administrative law judge found that plaintiff had a depressive disorder with mild to moderate

14

limitations of daily living, social functioning and concentration, persistence and pace; no episodes of decompensation; and no evidence of "C' criteria.  AR 15.

The administrative law judge also concluded that the residuals of plaintiff's cervical fusion constituted a severe impairment because they would impose some physical limitations on plaintiff.  However, he noted that the fusion was currently solid with no evidence of spinal stenosis and no significant abnormalities on the myelogram.  AR 15.  The administrative law judge did not find plaintiff's wrist, knee or back pain, migraine headaches or asthma to be severe physical impairments.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 16.  At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform simple, routine, repetitive light work activity that would not require her to lift more than 20 pounds total or 10 pounds frequently or stand or sit more than six hours in an eight-hour work day.  AR 17.  In determining plaintiff's residual functional capacity, the administrative law judge gave considerable weight to the state agency assessments, the consultative examinations of Drs. Varvil-Weld and Ray and the medical expert's testimony.  AR 18.

The administrative law judge did not give very much weight to Dr. Shannon's June 9, 2005 opinion that since August 2004, plaintiff could perform only a very limited range

15

of sedentary work and would be absent from work more than three days a month. He stated that Dr. Shannon's report was inconsistent with the clinical evidence as well as plaintiff's level of functioning in November 2004, when she told Dr. Shannon that she could tolerate an eight-hour workday but was having trouble working more than that. (In his decision, the administrative law judge referred incorrectly to the date of this progress note as January 2005). At that time, Dr. Shannon wrote a work restriction for plaintiff limiting her to a forty-hour week. The administrative law judge found that there was no event, other than plaintiff's disability application, that would account for the substantial increase in her work restrictions from November 2004 to June 2005. AR 17-18.

The administrative law judge further found that no other treating source suggested any limitations consistent with Dr. Shannon's June 9, 2005 opinion. Dr. Ray, the consulting state physician, did not find that plaintiff had any specific limitations and the state agency physicians found plaintiff could perform light work. AR 18. The administrative law judge relied on the assessments of the state agency psychologists and the medical expert in finding that plaintiff retained the mental residual functional capacity to perform simple, routine and repetitive work. AR 18.

In determining plaintiff's residual functional capacity, the administrative law judge found that plaintiff's claims regarding the intensity, duration and limiting effect of her symptoms were not supported by the evidence. AR 18. He found that plaintiff had been

16

working full-time until February 2005.  Noting that there was no evidence of an intervening event causing her condition to worsen, the administrative law judge wrote that in November 2004, she stated that she was able to work a forty-hour week and complained only that she had to work overtime.

The administrative law judge found that the clinical evidence and physical examinations were "relatively benign."  He indicated that the computed tomography scan did not show stenosis and the myelograms showed no significant abnormalities.  He noted, however, that on January 25, 2006, plaintiff had rated her pain at as a 10 on a 10-point scale.  The administrative law judge concluded that plaintiff was exaggerating because the evidence did not support her allegations of such severe pain.  He noted that even though she was taking oxycodone and morphine at the time of the hearing, her most recent medical examinations and tests did not show that she was in disabling pain.  AR 16.

The administrative law judge found that plaintiff was capable of performing her past relevant work as a customer service representative, salesperson and cashier.   In the alternative, he found that there were other jobs in the local economy that plaintiff could perform.  AR 18-19.

17

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

18

B. <u>Credibility</u>

Plaintiff challenges the administrative law judge's determination that her statements concerning the intensity, persistence and limiting effects of her symptoms were not supported by the evidence.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); <u>see also</u> <u>Scheck v. Barnhart</u>, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate

19

pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff criticizes the administrative law judge for failing to consider the factors set forth in SSR 96-7p, in particular the alleged side effects from her medications.  Although the administrative law judge could have done a better job of articulating his credibility determination, I do not find that he erred in making it or that he failed to build an accurate and logical bridge between the evidence and his conclusion.

20

The administrative law judge cited specific reasons for finding plaintiff's allegations not credible.  He found that the medical evidence did not support plaintiff's general allegations of severe pain.  He noted that although plaintiff was taking oxycodone and morphine for pain, her medical examination and test results were normal.  He also pointed out that plaintiff's cervical fusion was solid, there was no evidence of spinal stenosis and her myelogram was normal.

Contrary to plaintiff's general assertions, I find that the administrative law judge considered other relevant factors in addition to the medical evidence, including the location, duration, frequency and intensity of plaintiff's pain and symptoms; the factors that precipitate and aggravate her symptoms; treatment measures that she took for pain relief; and her work record.  He found that she was capable of working full-time after her cervical fusions until February 2005 and that there was no intervening event that would have caused her condition to worsen.  The record does not support plaintiff's argument that her condition continued to worsen to the point where she could no longer work.  On January 11, 2005, she reported severe pain in the  back of her neck, upper back and upper shoulder areas radiating into both arms.  She also reported that although her work activities aggravated her pain, the new medication Kadian was helping.  However, plaintiff did not seek further treatment until five months later, on June 6, 2005, when she also asked for Dr. Shannon's assistance in applying for disability benefits.  During that visit, Dr. Shannon noted that although plaintiff

21

had diffuse muscle tenderness, she had mild to moderate limitation in active cervical range of motion, full shoulder range of motion, good strength in her upper extremities and was doing reasonably well on her pain medications.  He even discussed the benefits of ongoing exercise with her.  Accordingly, it was reasonable for the administrative law judge to conclude that her symptoms had not worsened to the extent that she claimed.

Plaintiff specifically argues that the administrative law judge should have considered the side effects of her medications.  Plaintiff is correct that the administrative law judge did not directly mention plaintiff's medication side effects.  However, the only evidence of side effects were her own testimony and Dr. Shannon's June 9, 2005 opinion, which was based on plaintiff's self-reports.  The administrative law judge was present at the hearing during plaintiff's testimony and had considered Dr. Shannon's report at length.  Even if the administrative law judge technically erred by failing to address plaintiff's medication side effects, this error was harmless.  Two days before Dr. Shannon issued his opinion, he wrote that plaintiff was doing reasonably well on her pain medications.  On November 21, 2005, plaintiff reported that her medications had been helpful and allowed her to remain somewhat active.  On February 20, 2006, she specifically denied having any side effects.  The record does not support a finding that medication side effects exacerbated plaintiff's symptoms.

Although the administrative law judge could have addressed all of the SSR 96-7p factors more specifically, remand is not warranted.  I cannot find that another trier of fact

22

reviewing this record would reach a different conclusion about plaintiff's credibility.  Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006) (flaws in credibility analysis do not require remand if no conceivable way trier of fact could have made different credibility finding).  In sum, plaintiff has not demonstrated that this is one of those rare occasions in which the court should disturb the administrative law judge's credibility finding.  He gave good and well-founded reasons for finding plaintiff's allegations of disabling pain not credible.

## C. Treating Physician's Opinion

Plaintiff contends that the administrative law judge erred in rejecting Dr. Shannon's June 9, 2005 opinion that she could perform a very limited range of sedentary work and would be absent more than three days a month.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to

23

weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge stated that Dr. Shannon's June 9, 2005 opinion was inconsistent with his contemporary treatment notes and the fact that plaintiff was able to tolerate full-time work prior to February 2005.  He noted that in November 2004, Dr. Shannon had limited her to a forty-hour work week.  Upon examining plaintiff in June 2005, Dr. Shannon reported that she had mild to moderate limitation in active cervical range of motion and continued diffuse muscle tenderness but no worsening of these symptoms.  He also indicated that plaintiff was doing well on her current pain medications.  However, only two days later, Dr. Shannon stated that she could perform only limited sedentary work.  Accordingly, the administrative law judge reasonably found that there was no intervening event that supported the more severe limitations that Dr. Shannon found in June 2005.  He noted that no other treating source or state agency physician found limitations consistent

24

with his opinion.  The administrative law judge also pointed out that Dr. Shannon's June 9, 2005 opinion applied the severe restrictions back to August 20, 2004, contradicting his November 2004 opinion that plaintiff could work eight hours a day, forty hours a week. These findings are well-founded.

Moreover, Dr. Shannon's June 9, 2005 opinion was based not on clinical evidence but rather on plaintiff's subjective complaints of pain.  It is well-settled that an administrative law judge may disregard a medical opinion premised on a claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations  may be disregarded where those complaints have been properly discounted).  Because the administrative law judge properly discounted plaintiff's subjective statements concerning her symptoms, he could reject any opinions that

25

were based on those statements.   Therefore, I find that the administrative law judge
reasonably found that Dr. Shannon's June 9, 2005 opinion was not entitled to controlling
weight.

### D.  Mental Residual Functional Capacity

The administrative law judge found that plaintiff was limited to simple, routine and
repetitive work.  In making this assessment, he gave considerable weight to the psychological
opinions of Dr. Merrick, Dr. Spear, Dr. Varvil-Weld and the medical expert.  Dr. Merrick
was the only state agency physician to complete a mental residual functional capacity
statement about plaintiff.  In the "Summary Conclusions" section of the form, he indicated
that plaintiff was moderately limited in several areas, including:

- Maintaining attention and concentration for extended periods;

- Performing activities within a schedule, maintaining regular attendance and
  being punctual within customary tolerance;

- Working in coordination or proximity to others without being distracted by
  them;

- Completing a normal work day and work week at a consistent pace;

- Interacting appropriately with the general public; and

- Accepting instructions and responding appropriately to criticism from
  supervisors.

26

Plaintiff asserts that although the administrative law judge limited her to simple, routine and repetitive work, he failed to explain why he did not incorporate the other moderate limitations found by Dr. Merrick in his hypothetical to the vocational expert or his residual functional capacity assessment.

The commissioner argues that the residual functional capacity assessment is a legal matter reserved for the administrative law judge to determine from the record as a whole. 20 C.F.R. § 404.1546(c).  Although the commissioner is correct, plaintiff is making a different argument.  She is arguing that the administrative law judge failed to build a logical and accurate bridge from the evidence to his conclusion.  On this point, plaintiff is correct.

As plaintiff concedes, nothing in the commissioner's regulations or rulings requires an administrative law judge to incorporate a state agency psychologist's findings verbatim in a hypothetical or residual functional capacity finding.  Lembke v. Barnhart, 2006 U.S. Dist. LEXIS 95154, *24-27 (W.D. Wis. Dec. 29, 2006).  In this case, however, the administrative law judge did not discuss the findings at all, stating only that plaintiff "has no greater mental limitations" because "there is no evidence which challenges the assessments of the State agency."

Although I agree with plaintiff that the administrative law judge failed to properly articulate his reasoning in making his residual functional capacity assessment, this error was harmless.  With respect to mental residual functional capacity, a person must be able to

27

perform the following mental activities in order to perform competitive, unskilled work: understand, remember and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1545(a)(2); Soc. Sec. Ruling 96-9p.  Dr. Merrick's conclusions reasonably support a finding that plaintiff is able to perform these activities.  Specifically, he noted that plaintiff was not significantly limited in her ability to carry out short and simple instructions as well as detailed instructions, to make simple work-related decisions or to sustain an ordinary routine without special supervision.  (He made no finding as to plaintiff's ability to respond appropriately to changes in the work setting.)  Dr. Varvil-Weld's examination of plaintiff was consistent with these findings.  He concluded that plaintiff had no significant limitation in her ability to understand and remember instructions and did not have impaired judgment.

The regulations do not require a showing that the ability to maintain attention and concentration for <u>extended</u> periods, to work in coordination or proximity to others without being distracted by them and to interact appropriately with the general public are essential to the performance of unskilled work.  Of greater concern are Dr. Merrick's findings that plaintiff has moderate limitations in her ability to respond appropriately to supervision, complete a normal work day and work week at a consistent pace and to perform activities

28

within a schedule, maintain regular attendance and be punctual within customary tolerance. Arguably, these are required to perform even unskilled work.

The question remains whether plaintiff still could perform unskilled work with moderate limitations in these areas. The term "moderate" is not defined in the regulations or the forms completed by the state agency psychologists. The regulations define "marked" as "more than moderate but less than extreme." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(c)). Therefore, moderate means something significantly less than extreme. Dunn v. Astrue, 2008 WL 2611209, *9 (W.D. Wis. Jul. 2, 2008).

Although the administrative law judge failed to articulate why he found that plaintiff retained the ability to perform unskilled work in spite of her mental limitations, the vocational expert made clear in his testimony that plaintiff would not be precluded from her past work because of her moderate mental limitations. At the hearing, plaintiff's attorney asked the vocational expert whether an individual limited to simple, routine and repetitive light work and "seriously limited [in], though not precluded" from maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without distraction, interacting appropriately with the public and accepting instructions and responding appropriately to supervisory criticism could perform plaintiff's past work. The expert responded that such an individual would not necessarily be precluded from performing plaintiff's past work. It is reasonable to conclude that "seriously limited" is even

29

more restrictive than "moderate."  Therefore, if a seriously limited person would not be precluded from performing plaintiff's past work, neither would a moderately limited person. Accordingly, the vocational expert's opinion substantially supports the administrative law judge's residual functional capacity assessment.  Similarly, the vocational expert responded to a hypothetical that included plaintiff's relevant mental limitations.

Other evidence of record also supports a finding that plaintiff did not have mental limitations to the degree that would prevent her from performing her past work.  Plaintiff had a history of mental health problems predating Dr. Merrick's July 2005 mental residual capacity assessment, yet she was able to work full-time until her physical pain became too much for her in February 2005.  In fact, although plaintiff was undergoing counseling in July 2005, Dr. Grelle wrote that she was doing extremely well.  Following this, plaintiff had only "break-through" anxiety and underwent limited counseling.  Given these facts and plaintiff's relatively limited mental health treatment, the administrative law judge was entitled to discount any suggestion that she had a disabling mental impairment.  <u>Dunn</u>, 2008 WL 2611209, *9.

In sum, although the administrative law judge could have better articulated his findings concerning plaintiff's mental abilities, substantial evidence in the record supports his assessment of plaintiff's mental residual functional capacity.  Therefore, remand is not warranted.

30

E.  Vocational Expert Testimony

Plaintiff contends that the administrative law judge erroneously relied on the testimony of the vocational expert in finding that she could perform her past work.  She asserts that her past relevant work is listed as skilled or semi-skilled in the Dictionary of Occupational Titles, resulted in transferable skills or requires a reasoning level of three or higher and, therefore, cannot be performed by an individual who can only perform simple, routine and repetitive work.

At the hearing, the vocational expert classified plaintiff's past jobs as a customer service representative, gas station attendant, cleaner and cashier as unskilled work.  He testified that her work in sales and as a receptionist were semi-skilled and that her sales, cashiering and receptionist work resulted in transferable skills.  However, in response to a series of hypotheticals, the expert testified that an individual of plaintiff's age, education and work experience who was limited to simple, routine and repetitive light work and was moderately limited in her ability to perform certain mental abilities could still perform plaintiff's past work as a sales representative, customer service representative, cashier and receptionist.  The administrative law judge asked the expert to identify any conflicts between his testimony and the Dictionary of Occupational Titles.  He identified none and plaintiff did not question him regarding any discrepancies in his testimony.

Because no one questioned the expert's reasoning, the administrative law judge was entitled to accept the expert's conclusion even if it actually differed from the Dictionary.

31

Donahue v. Barnhart, 279 F. 3d 441, 446 (7th Cir. 2002).  As discussed in the previous section, the hypotheticals were an accurate representation of plaintiff's limitations. Therefore, it was reasonable for the administrative law judge to rely upon the uncontradicted testimony of the vocational expert that plaintiff could perform her past work.

Although the administrative law judge found plaintiff not disabled at step four of the sequential evaluation process, he went on to make a step five finding.  Again relying on the vocational expert's testimony, he found that there were other jobs that plaintiff could perform in Wisconsin, namely office helper, information clerk and surveillance monitor. Plaintiff challenges this testimony now, but she did not do so at the hearing.  Accordingly, because the vocational expert's reasoning went unchallenged, the administrative law judge was entitled to rely on it.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Tori J. Rains's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 11th day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

32